[*Special Term, June,* 1870.]

CINCINNATI COLLEGE *v.* T. A. NESMITH ET AL.

Upon an application for an injunction to prevent the laying a street-railroad track in the street upon which the plaintiff's lot fronts, although it is necessary that the consent of a majority of the property-holders on the street should be obtained, yet it will not be presumed that the city council acted without such consent, if its proceedings purport to be predicated upon it. And where the application for the injunction had been made on the part of a minority of the owners of property on the street, and a restraining order allowed, the order was vacated, retaining the petition and leaving the parties to apply under the law for appropriating property for public use, or to have damages assessed by a jury, but requiring the defendants to give security in $10,000 for any damages which might be sustained by laying the track.

*Perry & Jenney,* and *Morrill,* for plaintiff.

*Geo. E. Pugh,* and *Judges Matthews* and *Hoadly,* contra.

STORER, J.   A bill in equity is filed praying for a restraining order to prevent the defendants from laying down an

Cincinnati College *v.* Nesmith et al.

additional track on Walnut street, between Fourth and Fifth (the defendants claiming to have been authorized by the city council of Cincinnati), on the ground that they were not legally authorized to perform that work, the steps required by law preparatory to their action not having been pursued; and also on the ground that if the work should proceed as it had been commenced, the result would be irreparable damage to the plaintiffs. The case has assumed several aspects; and many propositions have been argued with great ingenuity, which, it seemed to the court, had very little pertinence to the case.

The court had no doubt as to the correctness of the ruling of the Supreme Court, in the case of *The Village of Delaware*, 7 Ohio St. 459, that the proprietor of land, bounded by a street, has an especial interest in the use and occupation of the highway itself, unknown to the common law and unknown to any other State in the Union except Ohio. But it must be limited to the especial case to which the judges have referred in giving their opinions. The proprietors of lots must found their rights entirely on the fact whether the usual and proper use of their property is either imperiled, greatly modified, or entirely destroyed.

The case of *The Village of Delaware* was this : A street had not been properly located originally, yet, notwithstanding, a lot adjoining had been built upon on the presumption that there had been a legal grade and a proper designation of the highway. It became necessary afterward, in order to improve the street, to cut down the highway several feet, and the owner who complained proved conclusively that he could not enter his premises or depart from them as conveniently as he could before, and the court laid down the proposition that when a man builds a house adjoining a street not properly graded and leveled, he does it at the risk of suffering damages, if there should be a change of that grade. If, however, the grade is once established, the municipal authority must take care that no

injury is done to the adjoining lot-owners, and if any such injury should take place they must pay for it.

This principle was again recognized in the case of *The Cumminsville Railroad,* 14 Ohio St. 523, where Judge Ranney states decidedly what he believed to be the law, founded on the idea I have just suggested. In the Cumminsville case, there was special reason for the interference of the court, for it was evident the entrance to and departure from the house itself, it being a place of business, would be materially interrupted.

It was admitted there that the right of eminent domain, which had been imparted by law to all those street railroads, would authorize them not only to take the highway, but at the same time the individual property; but, in order to prevent any difficulty and to conform the remedy to the constitution, it was declared the property taken there must be compensated, and hence it was proper the court should interfere. It is on the principle that if a man's incidental rights could be taken without compensation, his actual rights might be taken also.

The court could not conceive, therefore, that the proposition first assumed would authorize the granting of a restraining order, the parties being left to their remedy by appropriation, under the statute.

In the case of *Porteus B. Roberts* v. *Easton,* 19 Ohio St. 79, for the laying of a double track in front of the courthouse, the Supreme Court have held that, *in limine,* the owner of property bounding a public highway may obtain a restraining order, provided the authority under which the proprietors of the railway act has not been legally granted. If the city council have not pursued the ordinary legal mode preparatory to granting the power, they have no right whatever to impart it; but the court was not satisfied that that was the case.

The conclusion of the court is, that the council did act strictly within the rule required by the statute. They may, in the first place, grant to the company the right before re-

Cincinnati College *v.* Nesmith et al.

ceiving any additional evidence to make that right available; but before those who have received the franchise can proceed to operate, they must obtain the consent of a majority in interest of those whose property abuts the road on which the rails are to be laid.

It is, however, difficult to know what the city council did or did not do—for a whole year the subject was before them. Day after day it was discussed learnedly; sometimes left to the solicitor, then to the committee on law, then referred to a special committee, then taken from that committee and referred to a committee of the whole—so that it is difficult to know what was intended to be done. But there is a positive statement admitted on record that the council were satisfied the consent of the proprietors on Walnut street had been properly and legally given. *Prima facie* it was. Now, what is the evidence to defeat that conclusion, or to authorize the court to say the grant was improperly made? There is no proof of fraud, and if any exists, it must be latent and the subject of future development. It is evident two-thirds of the lot-owners on the street make no complaint. Three of the owners alone have applied, and the principal proprietors on the other side make no objection, but rather ask the council that the road may be permitted to be operated. About $220,000 or more in value on one side of the street, and less than $100,000 on the other, the minority asking for the restraining order on the ground their consent was not given. There is no proof here that the consent was not given; not a particle of evidence to authorize the assumption.

But it is said that a majority of the owners in interest, as their property is assessed, have not assented. Assessed by whom? Assessed by parties appointed by the court as competent to perform such a work? The court had no right to presume the legislature intended that the assessments, as found on the grand levy for county or city purposes, should be a criterion for all other assessments

The court had come to the conclusion that the act of the

city council was not *ultra vires,* but in conformity with the law. It must be admitted that unless the record was scrutinized carefully, it would be difficult to know what was done, for about seven-eighths of that record might be regarded as surplusage, and if the Caliph Omar was alive he would have committed it without any remorse to the same fate as the Alexandrian library.

The court would now vacate this order, but retain the petition, to give the parties the privilege, either of applying in the ordinary way, under the law appropriating property, or that a jury might be summoned to assess the value of whatever injury may have been sustained.

As the corporation is in its infancy, one merely projected, and one which has not yet operated, they would be required to give security in the sum of ten thousand dollars, for any damages they might hereafter sustain. The court took occasion to remark that all public improvements should be encouraged and protected.

When first street railroads were projected, their utility was doubted, and they did not meet with general favor, and received special opposition at the hands of those who supposed, with Othello, that their occupation was gone upon the introduction of these conveyances; but, after awhile, the improvement was recognized as a proper one. We can not, in this age, approve of what was said of God's ancient people, " their strength was to sit still."